**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**COLUMBIA DIVISION**

| | |
|---|---|
| CAROLINA WATER SERVICE, INC., ) | Civil Action Number: 3:15-cv-04919-MBS |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| REGINA MCCARTHY, ) | |
| ADMINISTRATOR, UNITED STATES ) | **OPINION AND ORDER** |
| ENVIRONMENTAL PROTECTION ) | |
| AGENCY, in her official capacity, ) | |
| ) | |
| UNITED STATES ENVIRONMENTAL ) | |
| PROTECTION AGENCY, ) | |
| ) | |
| and ) | |
| ) | |
| TOWN OF LEXINGTON, SOUTH ) | |
| CAROLINA, ) | |
| ) | |
| Defendants. ) | |

This matter is currently before the court for three motions: (1) a motion to dismiss filed by Defendant United States Environmental Protection Agency and Regina McCarthy, in her capacity as Administrator of the United States Environmental Protection Agency (collectively hereinafter "EPA") (ECF No. 24); (2) a motion to dismiss the counterclaim filed by Carolina Water Service, Inc. ("Plaintiff" or "CWS") (ECF No. 32); and (3) a motion for summary judgment filed by the Defendant Town of Lexington, South Carolina ("Town") (ECF No. 40). As explained below, the court dismisses CWS's action against the EPA for failure to state a claim upon which relief may be granted, and dismisses CWS's action against the Town and the Town's counterclaim for lack of subject matter jurisdiction.

# I.    FACTUAL BACKGROUND

The claims in this case arise out of an ongoing dispute concerning the continued discharge of wastewater into South Carolina's Lower Saluda River from a CWS-owned regional wastewater treatment plant ("I-20 Plant"). CWS is a privately-owned company that is a "public utility, as defined by S.C. Code Ann. §§ 58-3-5(6) and 58-5-10(4), and is authorized by a certificate of public convenience and necessity issued by the Public Service Commission of South Carolina ('PSC') to provide wastewater collection and treatment services to customers in various areas in the State of South Carolina, including portions of Lexington County, South Carolina." ECF No. 1 at ¶ 1. The Central Midlands Council of Governments ("CMCOG"), a board consisting of elected officials, administrators, and appointees from local counties, towns, and cities, is tasked with conducting water quality planning and management for the Midlands region of South Carolina. ECF No. 24-1 at 12. CWS's I-20 Plant is located in the Town and is within CMCOG's region. *Id.*

In 1979, pursuant to Section 208 of the Clean Water Act ("CWA"),[1] 33 U.S.C. § 1288, CMCOG drafted its original "208 Plan," a waste treatment and water quality plan for the Midlands area. Since then, the 208 Plan has been regularly amended. Under the current plan, the Town is the "Designated Management Agency (hereinafter 'DMA') and also the regional provider of wastewater collection and transportation services in a portion of the Midland's South Carolina region." ECF No. 1 at ¶ 4. The 208 Plan is subject to the review and approval of the South Carolina Department of Health and Environmental Control (DHEC), which the EPA authorized South Carolina to create in 1975. ECF No. 24-1 at 13. DHEC is the permitting agency for National Pollutant Discharge Elimination System (NPDES) permits in South Carolina. *Id.*

---

[1] The formal name of the Clean Water Act is the Federal Water Pollution Control Act Amendments of 1972. 33 U.S.C. §§ 1251-1376.

The NPDES program helps "regulate[] wastewater discharges from, among other things, sewage treatment plants in the State." *Id.*

In November 1994, "DHEC issued to CWS NPDES Permit SC0035564, which authorizes CWS to operate and discharge wastewater from the I-20 Plant into the Lower Saluda River subject to the terms and conditions of the permit." ECF No. 1. In accordance with the 208 Plan's requisite to eliminate discharges from small treatment facilities, the NPDES permit required the I-20 system to be connected to a regional facility when one became operational. An update to the 208 Plan in 1997 continued to require the I-20 Plant to connect with a regional wastewater facility when available. ECF No. 1 at ¶ 31. In 1999, the "Town finished construction on the regional sewer line and received a Permit to Operate from DHEC." *Id.* at ¶ 30. CWS alleges that since the completion of this facility in 1999, CWS has "proactively sought to address the discharge elimination requirement" but "each of those attempts have been rejected and interconnection remains unavailable to CWS." *Id.* at ¶ 31.

Without an interconnection agreement, discharge of wastewater into the Lower Saluda River continues. As a result, on January 14, 2015, Congaree Riverkeeper, Inc. ("CRK"), a South Carolina environmental advocacy group, brought a citizen suit pursuant to the CWA § 505, 33 U.S.C. § 1365, against CWS for (1) a violation of CWS's NPDES permit condition requiring connection of the facility to the regional system; (2) a violation of the relevant 208 Plan, issued pursuant to CWA § 208, 33 U.S.C. § 1288, which also requires connection of the facility to the regional system; and (3) a violation of the NPDES permit conditions regarding effluent limitations and other standards.[2] *See Congaree Riverkeeper, Inc. v. Carolina Water Service, Inc.* (Case No. 3:15-CV-194-MBS).

---

[2] The court has dismissed CRK's second cause of action relating to the 208 Plan.

CWS contends that it is unable to reach an agreement because there is a regional treatment facility, located in Cayce, South Carolina, that is subject to a contractual Water Services Agreement ("Agreement") between the City of Cayce, the Town, and the Lexington County Joint Municipal Water and Sewer Commission. CWS alleges that as part of the Town's purchase of part of this regional treatment facility, the Town covenanted to not enter into any contract or agreement (including an interconnection agreement) to treat wastewater generated by private wastewater utility entities, such as CWS. Furthermore, CWS alleges that the "bonds issued by the Town to finance its investment in the available allocated treatment and discharge capacity of the City of Cayce's [regional treatment facility] restrict the receipt and/or quantity of wastewater generated by privately-owned . . . utilities," such as CWS. ECF No. 25 at ¶ 45(a).

On August 1, 2016, DHEC denied renewal of CWS's I-20 Plant NPDES permit, with orders that give "the Town of Lexington and CWS 60 days to submit a coordinated plan to DHEC detailing how CWS will interconnect the wastewater discharge from the I-20 plant to Lexington's sewer system. Within 12 months, CWS must complete the tie into the Lexington sewer system, shut down the I-20 facility and eliminate discharge into the Saluda River." *DHEC Denies CWS I-20 Plant Permit and Orders Town of Lexington and CWS to Eliminate Discharge into Saluda River*, South Carolina Department of Health and Environmental Control (August 1, 2016), http://www.scdhec.gov/Agency/NewsReleases/2016/nr20160801-01/. DHEC had previously announced its intention to deny CWS a new NPDES permit. ECF No. 24-1. DHEC reasoned that CWS is ineligible for a permit because "the regional system is operational and CWS therefore must connect to a regional sewer system or other treatment facility." *Id.* at 15 (citation omitted).

## II.    PROCEDURAL HISTORY

On December 11, 2015, CWS filed a complaint against EPA and the Town alleging violations of the CWA, and seeking declaratory judgment or in the alternative, injunctive relief. ECF No. 1. Specifically, *inter alia*, CWS seeks the following.

(1)    Declaratory judgment against EPA finding that "EPA's approval of the annual certifications of the 1997 208 Plan is in violation of Section 208 and is therefore no longer valid to the extent that it recognizes as a DMA an entity lacking the requisite authority to act as such (*i.e.*, the Town)." *Id.* at ¶ 54(A).

(2)    Declaratory judgment against the Town for allegedly entering into the Agreement, which restricts the Town's ability to fulfill its duties under the CWA and the 1997 208 Plan. Additionally, CWS wants the court to find that the Town is in violation of the CWA and the 1997 208 Plan because it has refused to offer interconnection to CWS's I-20 system to allow compliance with the 1997 208 Plan.

(3)    Injunction of the 1997 208 Plan to the extent that the Town serves as DMA for the region or for an order enjoining the Town to offer interconnection to the I-20 system under the terms advanced by CWS and currently pending before the PSC.

A.    Procedural History—CWS and EPA

On February 11, 2016, EPA filed a motion to dismiss, arguing that the lawsuit is barred as to EPA by sovereign immunity, and that CWS failed to provide adequate notice to the EPA prior to filing suit. ECF No. 24. On February 15, 2016, CWS filed an amended complaint adding the Administrative Procedure Act, 5 U.S.C. §§ 701 et seq. ("APA"), as a basis for the court's jurisdiction. ECF No. 25.

On March 10, 2016, pursuant to a court order establishing a revised briefing schedule (ECF No. 27), EPA filed a supplement to its motion to dismiss. ECF No. 30. EPA's supplement counters, among other things, that CWS's APA argument is a "bare reference to the APA"; and is otherwise inapplicable because the challenged actions are committed to agency discretion. ECF No. 30 at 9. The EPA asserts that it does not have a mandatory duty to monitor or de-designate the Town. *Id.* at 14. On March 17, 2016, EPA filed an additional supplemental memorandum in support of its motion. ECF No. 31. This memorandum was brief, simply alerting the court that CWS mailed to EPA a letter dated February 29, 2016, purporting to serve as notice of suit under the CWA. *Id.* On April 15, 2016, CWS filed a response in opposition to the motion to dismiss, arguing that a reading of section 208 of the CWA and EPA's implementing regulations prove that CWS has asserted a viable claim under the APA. ECF No. 38. CWS also attempted to raise a claim that EPA failed to perform annual reviews of funds issued to South Carolina's State Revolving Fund ("SRF") program. ECF No. 38 at 13. On May 3, 2016, EPA filed a reply brief rejecting CWS's arguments and reasserting that the EPA does not have a mandatory duty to de-designate a state's selected DMAs. ECF No. 43 at 3–6. Further, the EPA argued that CWS cannot assert the SRF claim for the first time in its reply. ECF No. 43 at 9–10.

B. Procedural History—CWS and the Town

On January 4, 2016, the Town filed an answer to CWS's complaint. ECF No. 13. As stated above, on February 15, 2016, CWS filed an amended complaint adding the APA claims as an additional basis for the court's jurisdiction against EPA. ECF No. 25. CWS's amended complaint did not allege new claims against the Town. *See id*. On February 29, 2016, the Town filed an answer to CWS's amended complaint and filed a counterclaim against CWS seeking

actual and punitive damages, costs and expenses, and further relief as a result of CWS's alleged misuse of the declaratory judgment remedy. ECF No. 29. The Town alleges that CWS and the Town were actively negotiating, but now CWS brings this action "for an ulterior purpose and willfully misuses the declaratory judgment remedy in an attempt to gain advantage and to accomplish purposes not warranted by the process." ECF No. 29 at 8.

On March 21, 2016, CWS filed a motion to dismiss the counterclaim, arguing that the Town's counterclaim is untimely because it is a compulsory counterclaim that the Town failed to ask the court for leave to bring, and that the counterclaim fails to allege sufficient facts. ECF No. 32. On April 21, 2016, the Town filed a response to CWS's motion to dismiss, detailing facts about the negotiations between the parties to support the counterclaim's timeliness and its allegations. ECF No. 39. On May 13, 2016, CWS filed a reply to the Town's response, arguing again for dismissal of the counterclaim because of the Town's failure to assert the counterclaim in its first answer and failure to state a cognizable claim. ECF No. 44.

At the same time, the Town moved the court to address CWS's allegations in the amended complaint. On April 21, 2016, the Town filed a motion for summary judgment, arguing that CWS's declaratory claims are actually requests for injunctive relief and that the only private cause of action under the CWA is a citizen suit enforcement proceeding. Therefore, the Town argues that the court cannot grant relief to CWS because this action is not a citizen suit. ECF No. 40; ECF No. 40-1 at 4-8. On May 27, 2016, CWS filed a response, arguing that the Town misconstrues the structure of the action, and nevertheless, injunctive relief is proper since the court has general equitable powers and jurisdiction. ECF No. 46. On June 6, 2016, the Town filed a reply brief rejecting CWS's counterarguments and reasserting the Town's request for summary judgment. ECF No. 47. In these motions, the parties also debated the court's subject

matter jurisdiction over a declaratory judgment request on the restrictive covenants in the

Town's bonds and the Agreement.

On June 27, 2016, the parties appeared before the court for a hearing on EPA's motion to

dismiss and CWS's motion to dismiss.[3] ECF No. 48. After hearing the arguments of the parties,

the court took the motions under advisement and announced that it would issue a written order.

*Id.* This is the court's written order addressing EPA's motion to dismiss and CWS's motion to

dismiss. The court will also address the Town's motion for summary judgment herein.


### III.    EPA'S MOTION TO DISMISS

A. Standard for a 12(b)(1) and 12(b)(6) Motion to Dismiss

EPA moves under Federal Rules of Civil Procedure Rules 12(b)(1) and 12(b)(6) to

dismiss the complaint for lack of subject matter jurisdiction and for failure to state a claim upon

which relief can be granted. Federal courts are not courts of general jurisdiction; they have only

the power that is authorized by Article III of the Constitution and statutes enacted by Congress.

*Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986).

A Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction considers

whether this is the proper court to consider the action. A district court should dismiss a complaint

for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) if the complaint fails to allege

facts upon which subject matter jurisdiction can be based or if the jurisdictional allegations in the

complaint are not true. *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009). The plaintiff

bears the burden of proof in a 12(b)(1) motion to dismiss, as the plaintiff is asserting jurisdiction.

---

[3] At the time the hearing was scheduled, briefing on the Town's motion for summary judgment
was not complete. Therefore, the court did not hold oral arguments on this motion. The court will
address that motion herein based on the pleadings of the parties.

*Williams v. United States*, 50 F.3d 299, 304 (4th Cir. 1995). "In determining whether jurisdiction exists, the district court is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Richmond, Fredericksburg & Potomac R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991).

A Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted tests the legal sufficiency of a complaint. *Schatz v. Rosenberg*, 943 F.2d 485, 489 (4th Cir. 1991). While the complaint need not be minutely detailed, it must provide enough factual details to put the opposing party on fair notice of the claim and the grounds upon which it rests. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). In order to withstand a motion to dismiss, a complaint must contain factual content that allows the court to reasonably infer that the defendant is liable for the alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The court must accept the allegations in the complaint as true, and all reasonable factual inferences must be drawn in favor of the party opposing the motion. *Id.* at 679. If the court determines that those factual allegations can "plausibly give rise to an entitlement to relief," dismissal is not warranted. *Id.*

B. Discussion

In CWS's response to EPA's motion to dismiss, CWS concedes that this action is not a citizen suit brought under the CWA.[4] *See* ECF No. 38. Consequently, the notice requirement and

---

[4] The citizen-suit provision of the CWA provides:

> Except as provided in subsection (b) of this section and section 1319(g)(6) of this title, any citizen may commence a civil action on his own behalf—

9

waiver of sovereign immunity issues presented in EPA's motion to dismiss are moot. What remains from EPA's motion to dismiss are two issues under the APA: (1) whether the EPA under the CWA had a mandatory and nondiscretionary duty to de-designate the Town as a DMA under the 208 Plan; and (2) whether the EPA had a duty to perform mandated annual reviews and oversight of funds issued to the SRF program. The court will address each issue in order.[5]

    1.   The EPA does not have a mandatory and nondiscretionary duty to de-designate the Town as a DMA

EPA argues that CWS's de-designation claim is legally insupportable under the APA, primarily because, in the eyes of EPA, CWS has misinterpreted both the CWA § 208(c)(1) and (c)(2), and EPA regulations, 40 C.F.R. § 130.9. EPA maintains that the court should defer to

---

> (1) against any person (including (i) the United States, and (ii) any other governmental instrumentality or agency to the extent permitted by the eleventh amendment to the Constitution) who is alleged to be in violation of (A) an effluent standard or limitation under this chapter or (B) an order issued by the Administrator or a State with respect to such a standard or limitation, or
> (2) against the Administrator where there is alleged a failure of the Administrator to perform any act or duty under this chapter which is not discretionary with the Administrator.
>
> The district courts shall have jurisdiction, without regard to the amount in controversy or the citizenship of the parties, to enforce such an effluent standard or limitation, or such an order, or to order the Administrator to perform such act or duty, as the case may be, and to apply any appropriate civil penalties under section 1319(d) of this title.

[5] EPA also argues that CWS's claim is not an appropriate limited waiver of sovereign immunity under the APA because the APA only provides for judicial review of an agency action and waiver of sovereign immunity "only if 'there is no other adequate remedy in a court.'" ECF No. 30 at 7 (citing *National Wrestling Coaches Ass'n v. Dep't of Ed.*, 366 F.3d 930, 947 (D.C. Cir. 2004)). EPA contends that CWS has other remedies available, especially against the Town. The court does not analyze what remedies CWS has in this section because this order will later address the Town's motion for summary judgment and the validity of the claims CWS brings against the Town. Instead, in analyzing EPA's motion to dismiss, the court will only evaluate EPA's de-designation claim and CWS's SRF program claim.

EPA's interpretation of the statutes, which is an interpretation that allows state and local officials to monitor activities of DMAs, and views the CWA as plainly stating that the Governor has responsibility for the de-designation of a DMA in South Carolina. EPA also suggests that the court cannot hold that § 1288(c)(2) imposes on EPA a nondiscretionary duty to de-designate when § 1288(b)(4)(D)(i), the CWA's language regarding review and withdrawal of the 208 plan, does not require the EPA to immediately withdraw the 208 Plan if the state is not administering the program in accordance with CWA requirements.

On the other hand, CWS argues that the APA permits action against an agency for failure to act, and that upon the withholding of a non-discretionary action, courts, through the APA, may compel action. ECF No. 38 at 11. CWS suggests that it has sufficiently alleged that EPA failed to act in accordance with its mandatory and non-discretionary duty to de-designate the Town as a DMA. *Id.* According to CWS, the Town should have been de-designated as a DMA after signing the Agreement, because the Town could no longer fulfill its duties under the 208 Plan to offer an interconnection to the I-20 system and eliminate discharge into the Saluda River.

The relevant CWA statute regarding EPA oversight and approval of a DMA reads in part:

> c) REGIONAL OPERATING AGENCIES
> (1) The Governor of each State, in consultation with the planning agency designated under subsection (a) of this section, at the time a plan is submitted to the Administrator, shall designate one or more waste treatment management agencies (which may be an existing or newly created local, regional, or State agency or political subdivision) for each area designated under subsection (a) of this section and submit such designations to the Administrator.
> (2) The Administrator shall accept any such designation, unless, within 120 days of such designation, he finds that the designated management agency (or agencies) does not have adequate authority—
> (A) to carry out appropriate portions of an areawide waste treatment management plan developed under subsection (b) of this section;

> (B) to manage effectively waste treatment works and related facilities serving such area in conformance with any plan required by subsection (b) of this section;
> (C) directly or by contract, to design and construct new works, and to operate and maintain new and existing works as required by any plan developed pursuant to subsection (b) of this section;
> . . . .

CWA § 208, 33 U.S.C. § 1288(c).

The EPA's implementing regulation pertaining to the CWA and DMAs reads:

> (d) Designated management agencies (DMA). In accordance with section 208(c)(1) of the Act, management agencies shall be designated by the Governor in consultation with the designated planning agency. EPA shall approve such designations unless the DMA lacks the legal, financial and managerial authority required under section 208(c)(2) of the Act. Designated management agencies shall carry out responsibilities specified in Water Quality Management (WQM) plans. Areawide planning agencies shall monitor DMA activities in their area and recommend necessary plan changes during the WQM plan update. Where there is no designated areawide planning agency, States shall monitor DMA activities and make any necessary changes during the WQM plan update.

40 C.F.R. § 130.9.

When interpreting the CWA or like statutes, courts have "long recognized that considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer, and the principle of deference to administrative interpretations." *Chevron, U.S.A., Inc. v. Nat'l Res. Def. Council, Inc.*, 467 U.S. 837, 844 (1984). Accordingly, EPA's interpretation "governs if it is a reasonable interpretation of the statute—not necessarily the only possible interpretation, nor even the interpretation deemed *most* reasonable by the courts." *See Entergy Corp. v. Riverkeeper, Inc.*, 556 U.S. 208, 209 (2009) (emphasis in original).

The EPA interprets this regulation to mean that the Governor of each state is responsible for designating, de-designating, and otherwise monitoring the DMAs for compliance with the respective 208 plan. The court finds that EPA's interpretation is reasonable irrespective of the court's opinion as to what would be *most* reasonable. Assuming, as CWS alleges, that the Town no longer meets the criteria to be a DMA, the court finds EPA's interpretation of the statute, which concludes that the Governor is responsible for de-designating the Town as a DMA, is reasonable. The court reaches this conclusion because the CWA "imposed [the] major responsibility for control of water pollution on the states," and the EPA implementing guidelines explicitly provide that "[s]tates shall monitor DMA activities." *D.C. v. Schramm*, 631 F.2d 854, 860 (D.C. Cir. 1980); 40 C.F.R. § 130.9. Therefore, it is reasonable to conclude that, although the EPA is required to approve the designation of a DMA within 120 days, the EPA has no explicit monitoring and de-designation responsibilities after its approval is given. Instead, monitoring and de-designation responsibilities vest with the Governor and the state. Thus, even viewing the allegations of the amended complaint as true and drawing all factual inferences in favor of CWS, the court finds that EPA's interpretation of the statue—that EPA does not have a duty to de-designate the Town—is reasonable. As a result, the court cannot find that the facts of this case give rise to a cause of action under the APA against the EPA.

2. CWS cannot bring its claim that EPA failed to perform duties related to the SRF program

The second and final issue related to EPA's motion to dismiss involves CWS's allegation that EPA "arbitrarily and capriciously performed its mandated annual review and oversight of the funds issued under South Carolina's SRF Program for the construction of publicly owned treatment facilities that are contrary to the 208 [P]lan." ECF No. 38 at 12. This claim first appears in CWS's response in opposition to defendant's motion to dismiss (ECF No. 38), and is

not included in either CWS's complaint or amended complaint. Courts have not considered allegations asserted in an opposition brief if they were not first asserted in the complaint. *See Phillips v. Univ. of Maryland Baltimore Cty.*, No. 15-02066, 2016 WL 1301276, at *2 (D. Md. Apr. 4, 2016); *see also Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984) (declaring that "it is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss"). Consequently, the court will not consider allegations regarding the SRF Program as grounds for jurisdiction in this case.

The court grants EPA's motion to dismiss.

## IV.     THE COURT LACKS SUBJECT MATTER JURISDICTION OVER CWS'S CLAIMS AGAINST THE TOWN

As a threshold matter, the court must first consider whether it has subject matter jurisdiction over the claim. The court may raise lack of subject matter jurisdiction *sua sponte* and dismiss the action. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006); *Lovern v. Edwards*, 190 F.3d 648, 654 (4th Cir. 1999); Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). As discussed below, the dispute regards whether the Town's contract with the City of Cayce and the bond covenants violate its responsibilities under the CWA, i.e., whether the contract is valid. The need to analyze the CWA in determining whether the contract is valid is insufficient to create a substantial federal question.

A.     The Town's Summary Judgment Motion

On April 21, 2016, the Town moved for summary judgment pursuant to Federal Rules of Civil Procedure Rule 56. ECF No. 40. However, the crux of the Town's motion for summary

judgment is that the court lacks subject matter jurisdiction to hear CWS's complaint.[6] CWS argues that the Town's arguments of lack of subject matter jurisdiction are not "properly asserted in a motion for summary judgment, which necessarily involves a disposition of a case on the merits." ECF No. 46 at 2 (citing *Stanley v. Cent. Intelligence Agency*, 639 F.2d 1146, 1157 (5th Cir. 1981) (holding that "[s]ince the granting of summary judgment is a disposition on the merits of the case, a motion for summary judgment is not the appropriate procedure for raising the defense of lack of subject matter jurisdiction")). Nevertheless, "[t]he objection that a federal court lacks subject-matter jurisdiction, see [Fed. R. Civ. P. 12(b)(1)], may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment." *Arbaugh*, 546 U.S. at 506. Accordingly, the court must first consider whether the court has subject matter jurisdiction over CWS's causes of action.

B.    Lack of Subject Matter Jurisdiction

In the Town's motion for summary judgment, the Town argues that the court lacks subject matter jurisdiction over CWS's declaratory relief claim regarding the restrictive covenants in the Town's bonds and the Agreement because such claims are to be determined under the state law that governs the contract in question. ECF No. 40-1 at 12. The Town argues that mere necessity for interpretation of the CWA as part of a contract claim does not raise a substantial federal question. *Id.* at 13. Further, the Town argues that CWS's additional requests for declaratory judgment and injunctive relief are not permitted under the CWA's citizen suit provision, CWA § 505, 33 U.S.C. § 1365(a). CWS counters that the Town misconstrues the structure of the action. ECF No. 46. CWS argues that the bulk of its claims are in fact requests

---

[6] The Town also asserted that CWS fails to state a claim upon which relief may be granted. As the court dismisses for lack of subject matter jurisdiction, the court declines to determine whether CWS's complaint fails to state a claim for which relief may be granted.

for declaratory relief concerning the 208 Plan and validity under 28 U.S.C. § 2202, not claims brought under the citizen suit provisions. ECF No. 46 at 5-11. CWS argues that the Town's violations of the CWA 208 Plan invokes federal question jurisdiction as the court must interpret the CWA. ECF No. 46 at 14. CWS further claims that its requests for injunctive relief are "available only upon a declaration that a DMA must have the requisite authority to serve in that capacity and that the Town, by entering into contracts and issuing bonded indebtedness that contain covenants restricting its authority, lack [sic] the authority to serve as the DMA for the I-20 service area." *Id.* at 7, 12. Lastly, CWS suggests that this action is proper since the court has general equitable powers and jurisdiction. *Id.* at 7; 11-13.

1. The court does not have subject matter jurisdiction to determine the validity of the restrictive covenants in the Town's bonds and the Agreement.

Original jurisdiction is conferred upon federal courts if the matter in controversy "arises under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331 (2012). "A right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action." *Gully v. First Nat'l Bank*, 299 U.S. 109, 112 (1936). The court must first determine whether the Amended Complaint alleges a federal cause of action in its well-plead complaint. *See Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987). If not, the court must determine whether some element of the claim depends on the resolution of a substantial, disputed question of federal law. *Templeton Bd. of Sewer Commissioners v. Am. Tissue Mills of Mass.*, 352 F.3d 33, 36 (1st Cir. 2003); *see also Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 808-09 (1986) (noting that there is federal question jurisdiction "where the vindication of a right under state law necessarily turn[s] on some construction of federal law").

When federal law creates the cause of action, federal courts have subject matter jurisdiction over the action. *Mulcahey v. Columbia Organic Chemicals Co.*, 29 F.3d 148, 151 (4th Cir. 1994) (citing *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 817 (1986)). "If, however, state law creates the cause of action . . . federal question jurisdiction depends on whether the plaintiff's demand 'necessarily depends on resolution of a *substantial* question of federal law.'" *Id.* (citing *Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 28 (1983)). "The determination of whether a federal issue is sufficiently substantial should be informed by a sensitive judgment about whether the existence of federal judicial power is both appropriate and pragmatic." *Ormet Corp. v. Ohio Power Co.*, 98 F.3d 799, 807 (4th Cir. 1996).

CWS concedes that this is not a citizen suit under the CWA. ECF No. 46 at 6 n.7. However, Congress did not create a private remedy under the CWA outside of the citizen suit. *See Middlesex Cty. Sewerage Auth. v. Nat'l. Sea Clammer's Assoc.*, 453 U.S. 1 (1981) (hereinafter "*Middlesex*").  Given that CWS is not bringing a citizen suit, the issue is whether the court must make more than a mere interpretation of the CWA in order to declare the contract and covenants valid or invalid. In *Ormet*, the Fourth Circuit held that the district court could establish jurisdiction over a state contract claim implicating the EPA's allocation methodology because the claim required "interpretation and application of the [Clean Air] Act to the contractual arrangement between the parties." *Compare* 98 F.3d at 807, *with Rose Acre Farms, Inc. v. N. Carolina Dep't of Env't & Nat'l Res.*, 131 F. Supp. 3d 496, 507 (E.D.N.C. 2015), *appeal dismissed* (Sept. 17, 2015). The *Ormet* court further reasoned that the "allowances" are "critical to the Acid Rain Program," thus requiring uniform interpretation amongst the states. *Id.* at 807. The *Ormet* court held that "[w]here the resolution of a federal issues in a state-law cause of action could, because of different approaches and inconsistency, undermine the stability and

efficiency of a federal statutory regime, the need for uniformity becomes a substantial federal interest, justifying the exercise of jurisdiction by the federal courts." *Id.*

Conversely, in *Rose Acre Farms*, a corporate plaintiff sought a declaratory judgment that the farm's discharges of pollutants were exempt from federal CWA requirements and that the North Carolina Department of Environmental and Natural Resources could not require the farm to obtain an NPDES permit. 131 F. Supp. 3d at 507. Finding that "the CWA contemplates a federal-state partnership that is fundamentally different from the federally-administered program at issue in *Ormet*," the district court declined to exercise subject matter jurisdiction under 28 U.S.C. § 1331. *Rose Acre*, 131 F. Supp. 3d at 507. The court reasoned that establishing jurisdiction "would upset the congressionally-approved balance of responsibilities between federal and state courts with respect to the CWA's NPDES permitting scheme." *Id.*

In *Templeton Board of Sewer Commissioners*, the parties disputed whether, under the CWA, the water treatment plant owners were required to pay the user charge under Water Quality Act of 1987 § 205, 33 U.S.C. § 1284. 352 F.3d at 32–33. The First Circuit held that mere reference to the CWA in the contract did not create a substantial federal question. *Id.* at 41. The court found that the federal issue was "tangential to the parties' contractual rights," and that the EPA delegates these matters to state agencies "as a matter of course." *Id.* Similarly, in *Board of Trustees Painesville Township v. City of Painesville*, the City of Painesville sought an EPA grant to improve its existing wastewater treatment plant. 200 F.3d 396, 397 (6th Cir. 1999). In the grant application, the City suggested that others outside city limits would have access to the improved treatment plant. *Id.* at 398. However, the City refused to extend its services after the plant was built. *Id.* The Sixth Circuit held that the plaintiffs did not have a private right of action

under the CWA to enforce the grant provisions. *Id.* (referencing *Middlesex* as precluding private rights of actions under the CWA).

Here, the court has similar concerns because this claim also implicates the federal-state partnership created by the CWA. Although a contractual matter was also at issue as in *Ormet*, exercising jurisdiction over CWS's declaratory judgment request is neither appropriate nor pragmatic here. The contract issue between CWS and the Town deals with the specific 208 Plan for the Midlands region. It does not require substantial interpretation of the CWA. Congress delegated the duties to draft and approve 208 Plans to the states. CWA § 208, 33 U.S.C. § 1288(c). Congress delegated this authority to promote the efficient use of resources and "ensure the goals of the [CWA] were achieved within the framework of local needs and requirements." Central Midlands Council of Governments, *The 208 Water Quality Management Plan for the Central Midlands Region* 1 (Feb. 27, 1997). Accordingly, CMCOG drafted and DHEC approved the 208 Plan for the Midland's region. *Id.* A court will need to interpret the state-drafted 208 plan to address whether the covenants and the Agreement are illegal, unenforceable, or void against public policy under the 208 Plan. Unlike the need to interpret a term of the Clean Air Act, as in *Ormet*, the court will be interpreting a state-created document. Additionally, unlike *Ormet*, which affected the national interpretation of the Clean Air Act, the 208 Plan is specific for this area, and it does not require a uniform interpretation amongst the states. Accordingly, there is no substantial federal question. The court must dismiss for lack of subject matter jurisdiction under 28 U.S.C. § 1331.

> 2. CWS's remaining declaratory judgment requests are not valid claims for relief because the court cannot establish an independent source for jurisdiction to allow the declaratory judgment claims to proceed.

The Declaratory Judgment Act, 28 U.S.C. § 2202, is not an independent source of federal jurisdiction. *Schilling v. Rogers*, 363 U.S. 666, 677, (1960). "It also does not create substantive rights; it is merely 'a procedural device that enhances the remedies available' to plaintiffs in federal court." *Stewart v. Potts*, 983 F. Supp. 678, 685 (S.D. Tex. 1997). In *Stewart*, the plaintiffs sought a declaratory judgment to declare that a city would violate the CWA if it attempted to construct a golf course. *Id.* The court in *Stewart* dismissed the plaintiffs' claim under the Declaratory Judgment Act because the court determined that there was no jurisdiction under the CWA. *Id.* Here, CWS argues that its declaratory claim "arises under and depends upon the Court's analysis of the CWA." ECF No. 46 at 10. Due to the nature of CWS's declaratory judgment requests, the court must dismiss CWS's claims against the Town unless the court finds jurisdiction under the CWA.

As previously set forth, there is no private cause of action under the CWA outside of the citizen suit provision. *See Middlesex*, 453 U.S. at 1; *see also Davis v. United States*, 722 F.2d 1157, 1158 (4th Cir. 1983) (per curiam) (holding that a plaintiff cannot use the Federal Tort Claims Act to circumvent the restrictions on citizen suits in the CWA), *Ohio Valley Envtl. Coal. v. Miano*, 66 F. Supp. 2d 805, 809 (S.D. Ohio 1998) (hereinafter "*Ohio Valley*") (finding that unless a party can meet the requirements of the citizen suit provision, it is not the proper party to enforce the regulation or law); *but see Browner*, 834 F. Supp. at 967–68 (allowing a declaratory action by a city against the EPA and a state government for violations of § 208 of the CWA because plaintiff's complaint raised a sufficient federal question to confer subject matter jurisdiction).

In *Ohio Valley*, a private citizen plaintiff sought to enforce 40 C.F.R. § 123.25(c), an EPA regulation regarding state NPDES programs, against another private entity. 66 F. Supp. 2d

at 809. The *Ohio Valley* court determined that the plaintiff was not suing the EPA; therefore, §

1365(a)(2) was inapplicable; and plaintiff was not suing to enforce an effluent standard or

omission; therefore, § 1365(a)(1) was also inapplicable. Accordingly, the *Ohio Valley* court

concluded that the CWA did not authorize the private cause of action to enforce § 123.25(c) and

dismissed the claim. Here, as in *Ohio Valley*, CWS's requests for declarations are requests to

enforce the CWA and its applicable regulations. CWS itself acknowledges, "any determination

of this Court that the Town lacks the authority to serve as DMA for this region . . . necessarily

de-certifies the Town as a DMA." ECF No. 46 at 13, n.14. While CWS sues EPA under the

APA, its declaratory judgment claims against the Town are not claims against the EPA

Administrator. Additionally, CWS does not contest an effluent standard or limitation. Thus, as in

*Ohio Valley*, this court must find that CWS fails to state a valid cause of action as to the Town.

        3.    The court cannot grant relief on CWS's injunctive relief requests because the
             claims are a private cause of action outside of the CWA.

    CWS argues that the court has jurisdiction in equity to decide and issue injunctions

against the Town. ECF No. 46 at 12-13. CWS cites *Porter v. Warner Holding Co.,* 328 U.S. 395,

398 (1946), for the rule that equitable jurisdiction is not limited in the absence of "clear and valid

legislative command." Unless a statute explicitly, or through an inescapable inference, restricts

the court's equitable jurisdiction, the full scope of that jurisdiction is to be applied. *Id.* CWS

argues that there is no such prohibition here, and the court has the authority to impose the

requested injunctive relief. Conversely, the Town relies on *Middlesex*. The *Middlesex* court held

that "[i]n view of [the CWA's] elaborate enforcement provisions it cannot be assumed that

Congress intended to authorize by implication additional judicial remedies for private citizens

suing under [the CWA]." 453 U.S. at 14.

*Middlesex* controls this action. The *Middlesex* plaintiffs alleged that the defendants exceeded their permit limitations by discharging and dumping pollutants, and governmental entities allowed such discharge. 453 U.S. 1 at 12. The Supreme Court held that the *Middlesex* action had to be brought under the CWA citizen suit provision for enforcement of effluent limitations and violations, and that no private cause of action existed outside of the citizen suit provision. *Id.* at 18. Here, the injunctive claims are not for enforcement of an effluent limitation and the Town is not the Administrator, therefore § 1365(a)(2) is inapplicable. The court does not exercise its general jurisdiction in equity. CWS's injunctive relief claims are dismissed.

### V.    THE COURT LACKS SUBJECT MATTER JURISDICTION OVER THE TOWN'S COUNTERCLAIM

As stated above, the court must have subject matter jurisdiction over a claim. With regard to the Town's counterclaim, the court may have subject matter jurisdiction through supplemental jurisdiction. Under supplemental jurisdiction, if the court has original jurisdiction over a cause of action, the court may hear all claims related to the original cause of action. 28 U.S.C. § 1367(a). However, as the court lacks subject matter jurisdiction over CWS's causes of action, the court cannot exercise supplemental jurisdiction over Town's counterclaim.

Further, the court does not have original jurisdiction over the Town's counterclaim. The Town is asserting abuse of process, which is a state law tort claim. *See Food Lion, Inc., v United Food & Commercial Workers Int'l Union*, 567 S.E.2d 251, 253 (S.C. Ct. App. 2002) (discussing what plaintiff must demonstrate to prove an abuse of process claim). Federal courts do not have original jurisdiction over claims arising from state law. Accordingly, the court dismisses Town's counterclaim for lack of subject matter jurisdiction.

# VI.     CONCLUSION

For the reasons stated herein, the Motion to Dismiss the Case, ECF No. 24, filed Defendant United States Environmental Protection Agency and Regina McCarthy, in her capacity as Administrator at the United States Environmental Protection Agency (collectively, "EPA"), is **GRANTED**. The Motion to Dismiss Defendant Town of Lexington's Counterclaim, ECF No. 32, filed Plaintiff Carolina Water Service, Inc., is **GRANTED**. Plaintiff Carolina Water Service's cause of action is **DISMISSED** for lack of subject matter jurisdiction. The Motion for Summary Judgment, ECF No. 40, filed by Defendant Town of Lexington, South Carolina, which the court construes as a motion to dismiss, is **DENIED AS MOOT**.

**IT IS SO ORDERED.**

　s/ Margaret B. Seymour　　　　
Margaret B. Seymour
Senior United States District Judge

Columbia, South Carolina

September 29, 2016